CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Plaintiffs:
Fallen Productions, Inc.;
HB Production, Inc.;
Rambo V Productions, Inc.; and
Definition Delaware, LLC.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Fallen Productions, Inc., HB Productions, Inc., Rambo V Productions, Inc., and Definition Delaware, LLC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| MICAL MESOT, | ) ) |
| Defendant. | ) ) ) ) |

**Case No.: 1:20-cv-33-JAO-RT**
(Copyright)

**SECOND AMENDED COMPLAINT; EXHIBITS 1-4; DECLARATION OF DANIEL ARHEIDT**

**(1) CONTRIBUTORY COPYRIGHT INFRINGEMENT**
**(2) DIRECT COPYRIGHT INFRINGEMENT**

## SECOND AMENDED COMPLAINT

Plaintiffs Fallen Productions, Inc., HB Productions, Inc., Rambo V

Productions, Inc., and Definition Delaware, LLC (collectively: "Plaintiffs") file this

Second Amended Complaint against Defendant MICAL MESOT (previously

identified as DOE 1), and allege as follows:

## I.   NATURE OF THE ACTION

1.     This matter arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act").

2.     The Plaintiffs allege that Defendant is liable for: (1) direct copyright infringement in violation of 17 U.S.C. §§ 106 and 501; and (2) contributory copyright infringement.

## II.   JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.     Defendant either resides in, solicits, transacts, or is doing business within this jurisdiction, and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that his acts would cause injury in this jurisdiction.  As such, Defendant has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over him.

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and, (b) the Defendant resides, and therefore can be found, in this State.  Additionally, venue is proper in this District pursuant 28 U.S.C.

20-022B 20-cv-33

§ 1400(a) (venue for copyright cases), because the Defendant or Defendant's agent resides or may be found in this District.

## III.   PARTIES

### A.   The Plaintiffs

6.     The Plaintiffs are owners of the copyrights for the motion pictures (hereafter: "Works"), respectively, as shown in Exhibit "1".

7.     Plaintiffs Fallen Productions, Inc., HB Productions Inc. and Rambo V Productions, Inc. are corporations organized and existing under the laws of the State of Nevada, have principal offices in Los Angeles, California and are affiliates of Millennium Media, a production company and distributor of a notable catalog of major motion pictures.

8.     Plaintiff Definition Delaware, LLC is a limited liability company registered under the laws of the State of Nevada, has principal offices in Los Angeles, California and is an affiliate of Voltage Pictures, a production company with a notable catalog of major award-winning motion pictures.

### B.   The Defendant

9.     Upon information and belief, Defendant is an adult male currently residing in Kapolei, Hawaii.

10.     Upon information and belief, Defendant is currently a student at University of Hawaii at Manoa pursuing a BS in Electrical Engineering.

11.     Upon information and belief, Defendant obtained an Associate's Degree in Electrical Engineering from Leeward Community College in 2019.

12.     Upon information and belief, Defendant worked for over 20 years in the United States Army performing technical inspections and maintenance.

13.     The Defendant is a member of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm". The particular file a BitTorrent swarm is associated with has a unique "hash" number, which in this case for *Angel Has Fallen* is: SHA1: SHA1: 1B07CBAC8CDB508B08F483641B6D784A7756F8F4 (the "Unique Hash Number"). The file name is "Angel Has Fallen (2019) [WEBRip] [1080p] [YTS.LT]". Exhibit "2".

14.     Upon information and believe, Defendant received at least five notices styled per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") from his Internet Service Provider ("ISP") Charter requesting him to stop infringement of the Plaintiffs Works and other Works via BitTorrent protocol.

15.     Charter provides the Internet service for Defendant and assigned an Internet Protocol ("IP") address for Defendant.

16.     As shown in Exhibit "4", Defendant at IP address 72.130.106.50 registered for an account with a website referred to as YTS ("YTS website") using the email address "angelswarcry@gmail.com" ("gmail address").

17.    Charter identified the IP address as being assigned to Defendant.

18.    The YTS website is currently accessible at YTS.MX and was previously accessible at YTS, LT, YTS.AM and YTS.AG.

19.    The YTS website is known for distributing torrent files of copyright protected motion pictures.



20.

21.


## IV.   JOINDER

22.    Pursuant to Fed. R. Civ. P. 20(a)(1), each of the Plaintiffs are properly joined because, as set forth in detail above and below, the Plaintiffs assert: (a) a right to relief arising out of the same transaction, occurrence, or series or transactions, namely the use of the YTS website by Defendant for copying and distributing Plaintiffs' Works; and (b) that there are common questions of law and fact.

## V.   FACTUAL BACKGROUND

### A.  The Plaintiffs Own the Copyrights to the Works

23.    The Plaintiffs are the owners of the copyright in the Works, respectively.  The Works are the subjects of copyright registrations, and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "1".

6

24.    Each of the Works are motion pictures currently offered for sale in commerce.

25.    Defendant had notice of Plaintiffs' rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices.

26.    Defendant also had notice of Plaintiffs' rights through general publication and advertising associated with the motion pictures, and packaging and copies, each of which bore a proper copyright notice.

27.    The Works are motion pictures currently offered for sale in commerce.

28.    For example, a Blu-ray copy of the Work *Hellboy* was recently available for sale at a retailer in Kailua Kona, Hawaii for $15.95.



29.    For example, a Blu-ray copy of the Work *Angel Has Fallen* was recently available for sale at a retailer in Kailua Kona, Hawaii for $22.19.



30.    The YTS website provides torrent files, many including the name "YTS" in their file names, that can be used by a BitTorrent protocol client application to download copyright protected content, including Plaintiffs' Works.

31.    Defendant used the YTS website to download torrent files associated with Plaintiffs' Works and then used said torrent files to download and share copies of the Works.

32.    The YTS website displays, "WARNING! Download only with VPN…" and further information warning users that their IP address is being tracked by the ISP and encouraging them to protect themselves from expensive lawsuits by purchasing service from a VPN on its homepage.  Upon information and belief, this warning has appeared on the YTS website since 2018.

**Warning! Download only with VPN...**

Downloading torrents is risky for you: your IP and leaked private data being actively tracked by your **ISP** and **Government Agencies**. Protect yourself from expensive lawsuits and fines NOW! You must use a VPN like **Express**. It is the only way to download torrents fully anonymous by encrypting all traffic with zero logs.

### B. Defendant Used BitTorrent To Infringe the Plaintiffs' Copyrights.

33.     BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

34.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### 1. Defendant installed a BitTorrent Client onto his Computer.

35.     A BitTorrent Client is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

36.     Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent

protocol.

37.     Defendant installed a BitTorrent Client onto his computer.

### 2. The Initial Seed, Torrent, Hash and Tracker

38.     A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using, for example, the Client he or she installed onto his or her computer.

39.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

40.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

41.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

42.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash

identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

43.    The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

44.    The tracker computer or computers direct a peer user's computer to other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

45.    Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking.)

### 3. Torrent Sites

46.    "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites including the website YTS.

47.    Defendant went to torrent sites including the website YTS to download torrent files for Plaintiffs' copyrighted Works.

### 4. The Peer Identification

48.    The BitTorrent Client will assign an identification referred to as a Peer ID to the computer so that it can share content (here the copyrighted Works) with

other peers.

49.     Upon information and belief, Defendant was assigned a Peer ID by his BitTorrent client with a prefix "2D425437" which he used to download and share copies of copyright protected content from at least February 16, 2019 to February 23, 2020

## 5.  *Uploading and Downloading a Work Through a BitTorrent Swarm*

50.     Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

51.     The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

52.     Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

53.     In this way, all of the peers and seeders are working together in what is called a "swarm."

54.     Here, Defendant participated in a swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other

types of transmissions.

55.     In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

56.     Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because it continues to distribute the torrent file, here the copyrighted Work.

***6. The Plaintiffs' Computer Investigator Identified the Defendant's IP Address as a Participant in Swarms That Were Distributing Plaintiffs' Copyrighted Works.***

57.     The Plaintiffs retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

58.     MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

13

59.     MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

60.     The IP addresses, Unique Hash Numbers, and hit dates contained in Exhibits 2-3 accurately reflect what is contained in the evidence logs.

61.     The logged information in Exhibits 2-3 show that Defendant copied pieces of the Plaintiffs' copyrighted Works identified by the Unique Hash Numbers.

62.     The Defendant's computer used the identified IP address 72.130.106.50 as shown in Exhibits 2-3 to connect to the investigative server from a computer in this District in order to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

63.     MEU's agent analyzed each BitTorrent "piece" distributed by the IP address 72.130.106.50 listed on Exhibits 2-3 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

64.     MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

65.     MEU's agent logged 29,354 instances of infringing transactions in the

14

United States and 135,012 infringing transactions worldwide with the Unique Hash Number 1B07CBAC8CDB508B08F483641B6D784A7756F8F4 shown in Exhibit "2" as of January 21, 2020.

**C. Defendant seeded and distributed full copies of the Plaintiffs' motion pictures.**

66.     As shown in Exhibit "4", Defendant used the YTS account to download a torrent file associated with the Work *Rambo V Last Blood* from one or more computing devices under his control on Nov. 30, 2019 at 01:29:50 UTC.

67.     Upon information and belief, Defendant at IP address 72.130.106.50 used the YTS account to download torrent files associated with the Works *Angel Has Fallen, Hellboy* and *The Professor And The Madman*.

68.     Defendant at IP address 72.130.106.50 seeded and shared a copy of the file "Hellboy (2019) [WEBRip] [1080p] [YTS.LT]" on 7/11/2019 at 12:54:24 AM UTC. Exhibit "3".

69.     Defendant at IP address 72.130.106.50 seeded and shared a copy of the file "The Professor And The Madman (2019) [WEBRip] [1080p] [YTS.AM]" on 6/13/2019 3:13:39 AM UTC.  Exhibit "3".

70.     Defendant seeded copies of the Work *Angel Has Fallen* from computing devices under his control.

71.     Defendant seeded on his computing device and made available the files

of the Work *Angel Has Fallen* shown in Exhibit 2 available to users in the United States for at least 29,354 instances and the entire World for at least 135,012 instances to download and thus copy.

72.    Defendant distributed the file of the motion picture *Angel Has Fallen* to individuals in the World, United States and specifically Hawaii as shown in Exhibit 2.

73.    Defendant continued to pirate material via BitTorrent protocol until Charter notified him of the subpoena for his identification in this lawsuit on or around April 12, 2020.

74.    Defendant did such infringements intentionally and with full knowledge that such infringements were in violation of US law.

75.    Defendant used the gmail address not associated with his real name to evade detection of his massive movie piracy.

76.    Upon information and belief, Defendant does not have a DMCA agent as required by the DMCA act to assert safe harbor at the time of the infringements.

## VI. FIRST CLAIM FOR RELIEF
### (Direct Copyright Infringement)

77.    Plaintiffs re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

78.    Plaintiffs are the copyright owners of the Works which each contains

20-022B 20-cv-33

an original work of authorship.

79.    Defendant copied the constituent elements of the Works.

80.    Defendant made available copies of the Work via the BitTorrent protocol.

81.    Plaintiffs did not authorize, permit, or provide consent to Defendant to copy, reproduce, redistribute, perform, or display their Works.

82.    As a result of the foregoing, namely copying Plaintiff's Works, Defendant violated the Plaintiffs' exclusive rights to reproduce the Works in copies, in violation of 17 U.S.C. §§ 106(1) and 501.

83.    As a result of the foregoing, namely seeding and making available Plaintiff's Works via the BitTorrent protocol, Defendant violated the Plaintiffs' exclusive rights to distribute the Works in copies, in violation of 17 U.S.C. §§ 106(3) and 501.

84.    Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

85.    The Plaintiffs have suffered damages that were proximately caused by the Defendant's copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## VIII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon participation in the BitTorrent Swarm)

17

20-022B 20-cv-33

86.     Plaintiffd re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

87.     By participating in the BitTorrent swarms with others, Defendant induced, caused or materially contributed to the infringing conduct of others.

88.     Plaintiffd did not authorize, permit, or provide consent to the Defendant inducing, causing, or materially contributing to the infringing conduct of others.

89.     Defendant knew or should have known that the other BitTorrent users in a swarm with him were directly infringing the Plaintiffs' copyrighted Works by copying constituent elements of the registered Works that are original.  Indeed, Defendant directly participated in and therefore materially contributed to others' infringing activities.

90.     The Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

91.     By engaging in the contributory infringement alleged in this Second Amended Complaint, the Defendant deprived not only the producers of the Works from income that could have been derived when the respective film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawaii and their employees, and, ultimately, the local economy.  The

18

Defendant's misconduct therefore offends public policy.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully requests that this Court:

(A) enter a permanent injunction enjoining Defendant from continuing to directly infringe and contribute to infringement of the Plaintiffs' copyrighted Works;

(B) enter an order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a) that any service provider providing service for Defendant which he used to infringe Plaintiffs' Works immediately cease said service;

(C) award each of the Plaintiffs HB Productions, Inc., Rambo V Productions, Inc. and Definition Delaware, LLC actual damages and Defendant's profits in such amount as may be found; alternatively, at Plaintiffs' election, for maximum statutory damages of $150,000 per Work pursuant to 17 U.S.C.  § 504-(a) and (c);

(D) award the Plaintiff Fallen Productions Inc. actual damages of $651,365.26 for the infringements in the United States or $2,995,916.28 for the infringements in the World and Defendant's profits in such amount as may be found; alternatively, at Plaintiff Fallen Productions Inc.'s election, for maximum statutory damages of $150,000 pursuant to 17 U.S.C.  § 504-(a) and (c);

(E) award the Plaintiffs their reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiffs any and all other and further relief that this Court deems

just and proper.

 The Plaintiffs hereby demands a trial by jury on all issues properly triable by jury.

 DATED: Kailua-Kona, Hawaii, July 6, 2020.


    CULPEPPER IP, LLLC


    /s/ Kerry S. Culpepper
    Kerry S. Culpepper

    Attorney for Plaintiffs

20-022B 20-cv-33