CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:   (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Plaintiffs:
Fallen Productions, Inc.;
HB Production, Inc.;
Rambo V Productions, Inc.; and
Definition Delaware, LLC

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| Fallen Productions, Inc., et al. | ) | **Case No.: 1:20-cv-33-JAO-RT** |
| | ) | **(Copyright)** |
| Plaintiffs, | ) | |
| vs. | ) | MEMORANDUM IN SUPPORT OF |
| | ) | PLAINTIFFS' MOTION FOR |
| MICAL MESOT, | ) | DEFAULT JUDGMENT AGAINST |
| | ) | DEFENDANT MICAL MESOT |
| Defendant. | ) | |
| | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT MICAL MESOT

1

## **Table of Contents:**

Table of Authorities...................................................................................4

I.     Jurisdiction and Venue ....................................................................8

II.    Defendant's Default Entered.............................................................8

III.   Factual Allegations...........................................................................9

IV.    Argument.........................................................................................11

       A.    Copyright Infringements Have Been Established .............................11

       B.    Default Judgment is Appropriate ......................................................12

             1.  The Possibility of Prejudice to Plaintiffs…………………………13

             2. & 3. The Merits of Plaintiffs' Substantive Claims and the Sufficiency

of the SAC………………………………………………………………………14

             4.        The    Sum    of    Money    at    Stake    in    the

Action………………………………………………………………15

             5.        The   Possibility   of   a   Dispute   Concerning   the   Material

Facts………………………………………………………………15

             6.        Whether    the    Default    was    Due    to    Excusable

Neglect………………………………………………………………15

             7.                                                  The                 Policy

Considerations………………………………………………………16

V.     Statutory Damages…........................................................................17

VI.    Plaintiffs are Entitled to Injunctive Relief ................................. ...................20

VII.   Plaintiffs are Entitled to Attorney's Fees and Taxable Costs.......................23

      A.    The Degree of Success in the Litigation………...................................24

      B.    Deterrence………………………....................................................... 26

      C.    The Goals of the Copyright Act.......................................................... 26

      D.    Objective Unreasonableness…........................................................... 26

      E.    Calculation of Attorney's Fees………………………………………27

VIII.  Conclusion.....................................................................................................29

**Table of Authorities:**

*Statutes and Rules*

United States Copyright Act, 17 U.S.C. §§ 101 et. seq..........................................8, 11

17 U.S.C. §§ 106(1), (3)………………………………………………10, 19

17 U.S.C. § 410(c)………………………………………………………12

17 U.S.C. § 502(a)...........................................................................................20

17 U.S.C. § 503(b)...........................................................................................20

17 U.S.C. § 504(b)...........................................................................................18

17 U.S.C. § 504(c)...........................................................................................17

17 U.S.C. § 505………………………………………………………23

17 U.S.C. § 512(a)........................................................................................... 10

18 USC § 2318(3)………………………………………………………..18

28 U.S.C. § 1331.............................................................................................. 8

28 U.S.C. § 1338(a) ........................................................................................ 8

28 U.S.C. §§ 1391(b) and (c)............................................................................. 8

28 U.S.C. § 1400(a) ........................................................................................ 8

Fed. R. Civ. P. 12(a)(1)(A)............................................................................... 9

Fed. R. Civ. P. 26 .....................................................................................16, 22, 26

Fed. R. Civ. P. 55(a) ...................................................................................... 9

Fed. R. Civ. P. 55(b)(2) .................................................................................. 12

*Cases*

*AF Holdings, LLC v. Does* 1–1058, 752 F.3d 990, 992 (D.C. Cir. 2014) …..……10

*Allarcom Pay Television Ltd. v. Gen. Instr. Corp*., 69 F.3d 381, 387 (9th Cir. 1995)……………………………………………………………………………10

*Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997)…….22

*City of Burlington v. Dague,* 505 U.S. 557, 112 S. Ct. 2638, 2643, 120 L. Ed. 2d 449 (1992)……………………………………………………………………...27

*Cobbler Nevada, LLC v. Anonymous Users of Popcorn Time: Does 1–11*, 2016 WL 4238639, at *3 (D. Or. Aug. 10, 2016)…………………………………………24-25

*Cobbler Nevada, LLC v. Gonzales,* 901 F.3d 1142, 1144 (9th Cir. 2018)………….14

*Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001)………………………………………………..…….17

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv*., 789 F.3d 1075, 1088 (9th Cir. 2015)…………………………………………………………………………21

*Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017)…………22

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)……………………21

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986)…………………………13

*Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2005)………………………………...22

*Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)………………………………………………11, 26

*Fisher v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)……………….27, 28

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)…………………………..24

*Fustok v. ContiCommondity Servs., Inc.*, 873. F.2d 38, 40 (2d Cir. 1989)………...12

*Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018)…..24-26

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)……………………………………...27

*Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987)………………28

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)………………...27

*L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 991-92 (9th Cir. 1998)………………………………………………………………………………19

*LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006)…………………………………………………………………......…..11

*ME2 Productions, Inc. v. Pumares,* Civ. No. 1:17-00078 SOM-RLP, Doc. #42, at 14 (D. Haw. Oct. 19, 2017)……………………………………………………24-25, 29

*Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996)………………27

*Parr v. Club Peggy, Inc.*, 2012 U.S. Dist. LEXIS 24758 (D. Haw. Jan. 19, 2012)…………………………………………………………………………13

*Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)…………..16

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987)…………………………………………………………………………...28

*PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)…………………………………………………………………………13

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017)……………..24

*Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D.Cal. 2001)……………………………………………………………….......16

*Subafilms, Ltd. v. MGM-Pathe Comm'n Co.*, 24 F.3d 1088, 1097 (9th Cir. 1994) (en banc)…………………………………………………………………………18

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d915, 917–18 (9th Cir. 1987)……..12, 15

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488–89 (9th Cir. 2000)……......12

*Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002)…………………….28

*WPIX, Inc. v. IVI, Inc.*, 691 F.3d 275, 286 (2nd Cir. 2012)……………………21, 22

**Other Authorities**

5 Nimmer § 17.02……………………………………………………………... 19

U.S. COPYRIGHT OFFICE, THE MAKING AVAILABLE RIGHT IN THE UNITED STATES………………………………………………………….. 19

World Intellectual Property Organization Internet Treaties, art. 8…………... 19-20

## I.   <u>JURISDICTION AND VENUE</u>

This is an action for permanent injunctive relief and damages against Defendant MICAL MESOT ("Defendant") for copyright infringement in violation of the United States Copyright Act, 17 U.S.C. 101 §§ et. seq.

Defendant resides in this jurisdiction and has committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that his acts would cause injury in this jurisdiction.  As such, Defendant has sufficient contacts with this judicial district to permit the Court's exercise of personal jurisdiction over him.  *See* Second Amended Complaint ("SAC") [Doc. # 28] at ¶4.

This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a).  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(a).

## II.   <u>DEFENDANT'S DEFAULT ENTERED</u>

Plaintiffs Fallen Productions, Inc. ("Fallen"), HB Production, Inc. ("HB"), Rambo V Productions, Inc. ("Rambo"); and Definition Delaware, LLC ("Delaware") (collectively "Plaintiffs") commenced this action by filing the Complaint [Doc. #1] on January 23, 2020 against Defendants DOE.  Thereafter, Plaintiffs ascertained the true identities of the individuals who illegally downloaded and distributed the Plaintiff's copyrighted motion pictures *Angel Has Fallen*, *Hellboy*,  *Rambo V: Last Blood*, and *The Professor and the Madman* (collectively

8

"Works") by subpoenaing the Internet Service Providers for Defendants DOE. [Docs. ##9, 16]. Plaintiffs' Complaint was amended a first time to correctly identified Defendants DOE as Defendants DOES 1-30. *See* First Amended Complaint [Doc. #23]. Plaintiffs' Complaint was amended a second to time to specifically identify Defendant DOE 1 by his name. *See* SAC [Doc. # 28]. Plaintiff effected services of Defendant personally on July 18, 2020, making his answer due on August 10, 2020. *See* Fed. R. Civ. P. 12(a)(1)(A), Proof of Service [Doc. #33]. When Defendant failed to appear, plead, or otherwise defend, Plaintiffs filed a Rule 55(a) request for the entry of default on August 12, 2020 [Doc. # 37], which was promptly granted by the Court. *See* Entry of Default [Doc. # 38].

## III.   <u>FACTUAL ALLEGATIONS</u>

Plaintiffs Fallen, HB and Rambo are Nevada corporations that own the copyrights for the motion pictures *Angel Has Fallen*, *Hellboy* and *Rambo V: Last Blood,* respectively. *See* SAC [Doc. #28] at ¶23. Plaintiff Delaware is a Nevada limited liability company that owns the copyright for the motion picture *The Professor and the Madman*. *See Id.* The Plaintiffs' motion pictures (referred to as Works) are duly registered with the Copyright Office. *See* Exhibit "1" [Docs. #28-1] to the SAC. The Works are currently for sale in commerce. *See* SAC at ¶¶24, 27-29. Accordingly, Plaintiffs' production and marketing of the motion pictures shares little resemblance to entities hiding in the shadows, buying the copyrights to

pornographic films (without creating anything), and seeking settlements from crowds of John Does embarrassed that they were "caught" downloading tawdry titles. *See AF Holdings, LLC v. Does* 1–1058, 752 F.3d 990, 992 (D.C. Cir. 2014) (describing the "modus operandi" of a copyright troll).

Defendant used his registered account with the movie piracy website YTS to download torrent files of Plaintiffs' Works. Defendant then seeded copies of the Works from his computing device(s) in Hawaii and made them available to individuals throughout the world. SAC at ¶¶66-72. For example, Defendant was confirmed sharing at least a piece of *Angel Has Fallen* to users in the United States for at least 29,354 instances and the entire World for at least 135,012 instances. *Id*. at ¶14. Defendant's conduct of reproducing and distributing copies of Plaintiffs' exclusive rights in the Works violated their exclusive rights of reproduction and distribution. *See* 17 U.S.C. §§ 106(1), (3). Defendant continued this flagrant conduct despite receiving at least five notices styled per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") from his Internet Service Provider ("ISP") Charter requesting him to stop infringement of Plaintiffs Works and other Works via BitTorrent protocol. *See* SAC at ¶71. Indeed, Defendant continued this flagrant conduct up until Charter notified him of the subpoena for his identification in this lawsuit on or around April 12, 2020. *Id*. at ¶73.

10

There is no question that Defendant—without Plaintiffs' authorization or license—intentionally and knowingly used a BitTorrent client application to download and distribute the Works. *Id*. at ¶74. Obtaining Plaintiffs' Works required Defendant to take several deliberate steps in order to obtain a viewable version. He had to install the BitTorrent client application onto his computer. *Id*. at ¶37. Defendant had to logon to the YTS website to obtain the torrent files for the Works while seeing the warning display about possible lawsuits. *Id*. at ¶32, Exhibit "4" to the SAC. Defendant had to have seen the Copyright notice prominently shown in the Works after pressing play and on the packaging. *Id*. at ¶¶25-26. Finally, Defendant was aware that he did not pay for the Works and did not take any steps to obtain a valid copy or license.

## IV. <u>ARGUMENT</u>

The SAC alleges claims for copyright infringement, in violation of the United States Copyright Act, 17 U.S.C. 101 §§ et. seq.

### A. <u>Copyright Infringements Have Been Established</u>

A Plaintiff asserting a copyright infringement claim must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006). In the SAC,

Plaintiffs alleged that they own the copyrights for the Works and attached evidence of valid Certificates of Copyright Registration numbers issued by the Register of Copyrights. *See* SAC at ¶23 and Exhibit "1" to the SAC. "Registration is *prima facie* evidence of the validity of a copyright." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488–89 (9th Cir. 2000) (citing 17 U.S.C. § 410(c) (1994)). Moreover, because the factual allegations of the SAC are deemed true, Plaintiffs have conclusively established that Defendant infringed upon Plaintiffs' copyrights and that his infringements were both knowing and willful. *See* SAC at ¶¶84, 90.

B.    <u>Default Judgment is Appropriate</u>

Despite being personally served with a copy of the SAC, Defendant has failed to appear. As a result, Plaintiffs requested and received an entry of default [Doc. # 38]. Because Defendant has chosen to default instead of defending, he has admitted the truth of the allegations asserted in the SAC. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). While the court may conduct a hearing to determine damages, *See* Fed. R. Civ. P. 55(b)(2), the court can rely on evidence submitted by Plaintiffs. *See Fustok v. ContiCommondity Servs., Inc.*, 873. F.2d 38, 40 (2d Cir. 1989).

Plaintiffs now respectfully requests that this Court enter a default judgment against Defendant.  When evaluating whether to grant a judgment by default, courts consider a number of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986); *see also Parr v. Club Peggy, Inc.,* 2012 U.S. Dist. LEXIS 24758 (D. Haw. Jan. 19, 2012).  All of these factors support the conclusion that Plaintiff is entitled to a default judgment.

1. *The Possibility of Prejudice to Plaintiffs.*

Plaintiffs would certainly be prejudiced if the Court declines to enter default judgment, for it would leave Plaintiffs without any remedy against Defendant, who has failed to even show up and contest this dispute. "If Plaintiff['s] motion for default judgment is not granted, Plaintiff[] will likely be without other recourse for recovery." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Despite the fact that Defendant doesn't deny that Plaintiff is entitled to an award of statutory damages, attorneys' fees, costs, and a permanent injunction, if this Court refuses to enter a default judgment against him, Plaintiffs would be left unable to seek damages.  Indeed, a refusal would entirely frustrate both the Copyright Act and the civil justice system.

2. & 3.  *The Merits of Plaintiffs' Substantive Claims and the Sufficiency of the SAC.*

Plaintiffs have adequately pleaded their claims for copyright infringement. In the SAC, Plaintiffs alleged that they own the copyrights for the Works (SAC at ¶23) and attached a list of the valid Certificates of Copyright Registration numbers issued by the Register of Copyrights as Exhibit "1".  Moreover, because the factual allegations of the SAC are deemed true, Plaintiffs have conclusively established that Defendant infringed upon Plaintiffs' copyrights and that his infringement was both knowing and willful. *See* SAC at ¶¶84, 90.

In *Cobbler Nevada, LLC v. Gonzales,* the Ninth Circuit concluded that a bare allegation that a defendant is the registered subscriber of an Internet Protocol ("IP") address associated with infringing activity is not sufficient to state a claim for direct or contributory infringement. *See Cobbler Nevada, LLC v. Gonzales,* 901 F.3d 1142, 1144 (9th Cir. 2018).  In the present case, Plaintiffs have pleaded facts that amount to more than a mere allegation that Defendant was the registered subscriber of an IP address. As shown in Exhibit "4" to the FAC, Defendant registered for an account with the YTS website using a specific email address "angelwarcry@gmail.com" and logged into the YTS website using this email address from IP address 72.130.106.50 to download torrent files of Plaintiffs' Works.  The data showing this activity was verified by Senthil Segaran – the operator of the YTS website.  *See* pg. 3 of Exhibit

14

"4". Charter has confirmed that the IP address 72.130.106.50 was assigned to the Defendant. The Defendant's publicly available Facebook website includes the name "angelswarcry" – exactly the same as the login account name to the YTS website. Finally, the email address Defendant chose is remarkably consistent with his prior experience of performing technical inspection and maintenance of helicopters while he was in the US Army. *See* Decl. of Counsel at ¶¶3-8, SAC at ¶14. Thus, it is highly unlikely that a third party was able to obtain the consistent access for the observed activity through hacking or any other means to the email and Internet accounts of Defendant.

4.   *The Sum of Money at Stake in the Action*

The amount of money at stake relative to the cost of continued litigation makes the matter appropriate for default judgment.

5.   *The Possibility of a Dispute Concerning the Material Facts*

There is no possibility of a dispute arising as to any material fact in this case. Because of Defendant's default, this Court must take the factual allegations asserted in the SAC as true. *See TeleVideo Sys., Inc.*, 826 F.2d at 917–18. Moreover, Defendant has not made any attempt to contest those allegations (or for that matter, even bothered to appear).

6.   *Whether the Default was Due to Excusable Neglect*

15

Defendant's default is not the result of excusable neglect. As discussed above, Defendant was personally served a copy of the SAC [Doc. 33].  Plaintiffs' counsel left a voice mail with Defendant requesting that he agree to a time for the Rule 26 conference but Defendant has not replied.  *See* Decl. of Counsel at ¶2.

Thus, on several occasions, Defendant has been provided with notice of this proceeding and the risks for failing to appear. Accordingly, Defendant's decision to neither appear nor defend "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal.2001) (reasoning that excusable neglect is not present when Defendant "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

7.  *The Policy Considerations*

While it is true that "cases should be decided upon their merits whenever reasonably possible," Defendant's failure to respond to this lawsuit makes achieving a ruling on the merits entirely unfeasible. *See Pena v. Seguros La Comercial*, S.A., 770 F.2d 811, 814 (9th Cir. 1985). Accordingly, the only way for this case to reach a resolution of any kind is to award Plaintiffs default judgment. Absent a judgment by default, Plaintiffs will not be made whole and has no mechanism to prevent further infringement of its copyright by this same Defendant.  In summary, as

16

demonstrated above, all of the factors weigh in favor of granting Plaintiffs a default judgment against Defendant.

## V.   <u>STATUTORY DAMAGES</u>

Plaintiffs HB, Rambo and Delaware each elect to receive statutory damages of $750 for Defendant's infringements of the respective Work.   Pursuant to 17 U.S.C. § 504(c), "A plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of the defendant's profits." *Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (citation omitted). Plaintiff is entitled to an award of damages of no less than $750.00 per work and up to $30,000.00 per work for a non-willful violation, and for a willful infringement, no more than $150,000.00 per work for Defendant's violations of the Copyright Act. 17 U.S.C. § 504(c)(1) and (2).

Despite this Court's authority to award statutory damages of up to $150,000 for Defendant's willful infringement, Plaintiffs HB, Rambo and Delaware seek only $750 in statutory damages per Work from Defendant for a total of $2250.

Plaintiff Fallen elects to receive statutory damages in the amount of $97,704.78 for Defendant's willful infringements of the Work *Angel Has Fallen*.  As alleged in the SAC, Defendant seeded on his computing device and made available the files of the Work *Angel Has Fallen* shown in Exhibit 2 to users in the United States for at least 29,354 instances and the entire World for at least 135,012 instances

to download and thus copy.  *See* SAC at ¶71.  Defendant's conduct has caused actual damages of $651,365.26 for the infringements in the United States and a total $2,995,916.28 for the infringements in the World based upon the retail prices of the Work. *See Id*. at ¶¶29, 65.  Calculating damages by multiplying the retail price of the motion picture by the number of infringements is an acceptable mechanism for measuring damages per US law.  For example, 18 USC § 2318(3) provides for calculation of actual damages by multiplying the retail value of the motion picture ((c)(iii)) by the number of works with counterfeit or illicit label as done here.  *See* 18 USC § 2318(3).  Similarly, 17 USC § 504(b) requires a copyright owner to "present proof of the infringer's gross revenue…" to establish the infringer's profits. *See* 17 USC § 504(b).  That is, Plaintiffs are not required to show deductible expenses or that the profit is attributable to other factors than the copyrighted work. *See Id.*  Accordingly, Plaintiff Fallen respectfully submits that a calculation of a multiple of the retail price for the motion picture by the number of infringements (each of which was a permanent copy of the Work) is an accurate reflection of the actual damages.

Because the Defendant distributed copies of the Work from the United States, he is liable for the infringing copies he distributed Worldwide.  The Copyright Act does not extend "to acts of infringement that occur entirely overseas." *Subafilms, Ltd. v. MGM-Pathe Comm'n Co.*, 24 F.3d 1088, 1097 (9th Cir. 1994) (en banc).  To

state a claim for copyright infringement, plaintiff must allege that at least one act of infringement was completed entirely in the United States. *See L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 991-92 (9th Cir. 1998) (citing *Allarcom Pay Television Ltd. v. Gen. Instr. Corp*., 69 F.3d 381, 387 (9th Cir. 1995)). However, where an act of infringement takes place in the United States and enables further exploitation abroad, plaintiff may recover damages for extraterritorial exploitation. *Id*.; *see also* 5 Nimmer § 17.02 (explaining predicate act doctrine). Defendant's act of seeding a copy of the Work to share it via the BitTorrent protocol from the United States (Hawaii) violates Plaintiff Fallen's exclusive right of distribution per 17 U.S.C. § 106(3). *See* U.S. COPYRIGHT OFFICE, THE MAKING AVAILABLE RIGHT IN THE UNITED STATES at p. 74 (Feb. 2016) ("Copyright Office Report") ("In general, where a party offers members of the public access to a work in the form of a download, the offer implicates the right of distribution . . . . the statutory language, context, and legislative history all indicate that Congress intended to reserve to copyright owners the right to determine whether and how their works are made available to the public in copies, including digital files…."); *see also*, World Intellectual Property Organization Internet Treaties ("WCT") ("[A]uthors of literary and artistic works shall enjoy the exclusive right of authorizing any communication to the public of their works, by wire or wireless means, including the making available to the public of their works in such a way that

members of the public may access these works from a place and at a time individually chosen by them.") WCT, art. 8 at p. 13.  Thus, despite Defendant being liable for $2,995,916.28 for the infringements in the World and his, profits, Plaintiff Fallen is only requesting damages of $97,704.79, which is merely 15 percent of the actual damages ($651,365.26) caused by his  infringements in the United States and less than 3.3 percent of the actual damages Worldwide.

## VI.    PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF

Plaintiffs request that the Court grant its request for injunctive relief, permanently barring Defendant from directly and contributorily infringing Plaintiffs' copyrights in the Work.

The Court is authorized to grant permanent injunctive relief to prevent or restrain copyright infringement.  *See* 17 U.S.C. § 502(a)(2) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or refrain infringement of a copyright.") The Copyright Act further provides that "the court may order the destruction. . .of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights . . ." 17 U.S.C. § 503(b).  A Plaintiff is required to satisfy the following four-factor test to obtain a permanent injunction: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages,

are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088 (9th Cir. 2015).

Defendant's distribution of Plaintiffs' Works worldwide is causing Plaintiff irreparable harm by threatening the royalties Plaintiffs receive from distribution agreements.  Money damages are not adequate to compensate Plaintiffs for the loss of control over their Works, the damage to their business goodwill, and the harm to the development of a legitimate online distribution market.  *See WPIX, Inc. v. IVI, Inc.*, 691 F.3d, 275, 286 (2nd Cir. 2012) (unrestrained unauthorized Internet retransmissions of broadcast programming "would encourage" other services to follow suit, "weaken plaintiffs' negotiating position," adversely affect "quantity and quality of efforts put into creating" new works, and "drastically change the industry, to plaintiffs' detriment").

The hardship Plaintiffs will face if the Court denies Plaintiffs injunctive relief greatly outweighs any harm to the Defendant.  That is, the Defendant would suffer no harm from being enjoined from engaging in unlawful conduct. The Ninth Circuit recently reaffirmed the "long-settled principle that harm caused by illegal conduct does not merit significant equitable protection." *Disney Enters., Inc. v. VidAngel,*

*Inc.*, 869 F.3d 848, 867 (9th Cir. 2017); *see also Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997) ("[w]here the only hardship that the defendant will suffer is lost profits from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration..." (quotations and citations omitted)); *WPIX*, 691 F.3d at 287 ("axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product" (quotations and citations omitted)).

"[T]he public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating television programming and motion pictures." *Disney Enters., Inc.*, 869 F.3d at 867 (quotations and citations omitted); *see Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2005) ("[t]he economic philosophy behind the [Copyright] [C]lause...is the conviction that encouragement of individual effort by personal gain is the best way *to advance public welfare* through the talents of authors and inventors" (emphasis added)).

Due to Defendant's refusal to communicate with Plaintiff's counsel, Plaintiff could not have the Rule 26 conference. Therefore, Plaintiff was unable to conduct discovery to determine if Defendant is continuing to infringe the Works from different IP addresses and the extent to which he profited from his infringing activity. Nonetheless, Plaintiff respectfully submits that Defendant's failure to appreciate the

seriousness of this proceeding demonstrates that there is a high likelihood of continuing violations of Plaintiff's copyright if Defendant is not enjoined.

Accordingly, unless this Court grants an injunction, Defendant will likely be the source for others to download the Works over and over.  For these reasons, Plaintiff respectfully requests that the Court grant Plaintiffs injunctive relief prohibiting Defendant from directly and contributorily infringing Plaintiff's copyrighted Work in the future. Additionally, Plaintiff requests that the Court order Defendant to destroy all copies of the Works that he made or used in violation of Plaintiffs' copyrights and to refrain from knowingly and willfully using BitTorrent or the Internet for copying or downloading Plaintiffs' Works in violation of U.S. copyright law in the future.

## VII.   **<u>PLAINTIFFS ARE ENTITLED TO ATTORNEY'S FEES AND TAXABLE COSTS.</u>**

The Copyright Act states that a district court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The Supreme Court has provided the following nonexclusive list of factors for district courts to consider in a making a fee determination under the Copyright Act: (1) frivolousness; (2) motivation; (3) "objective unreasonableness (both in the factual and in the legal components of the case)"; and (4) "the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*

*v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). The Ninth Circuit has held that courts may also consider these factors: "[T]he degree of success obtained in the litigation, the purposes of the Copyright Act, and 'whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious [litigant].'" *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018) (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017)). Furthermore, the Ninth Circuit has "emphasized that district courts should 'accord substantial weight to' the 'reasonableness of [the] losing party's legal and factual arguments.'" *Id.*

Plaintiffs assert that the following factors support granting its motion for attorney's fees: (1) Plaintiffs' degree of success in the litigation; (2) deterrence; (3) furtherance of the purposes of the Copyright Act; and (4) the objective unreasonableness of the losing party's litigation conduct.

A. The Degree of Success in the Litigation

In this case, Plaintiffs' suit against Defendant was a total success. Plaintiffs alleged that Defendant willfully violated its exclusive rights under the Copyright Act. *See* SAC at ¶¶84, 90.

In *ME2 Productions, Inc. v. Ferdinand Pumares et al.*, this Court concluded that the reasoning of a Magistrate Judge in the Oregon District Case of *Cobbler Nevada, LLC v. Anonymous Users of Popcorn Time: Does 1–1* that the degree of

24

success in BitTorrent copyright infringement cases was minimal because the fees spent to achieve the award were high in proportion to the $750 damage award "makes sense to this court…" *ME2 Productions, Inc. v. Pumares,* Civ. No. 1:17-00078 SOM-RLP, Doc. #42, at 14 (D. Haw. Oct. 19, 2017) (discussing *Cobbler Nevada, LLC v. Anonymous Users of Popcorn Time: Does 1–11*, 2016 WL 4238639, at *3 (D. Or. Aug. 10, 2016)). The Court went on to note the number of individuals who had been sued by the Plaintiff. *See Id*. However, this type of approach was recently criticized by the Ninth Circuit in *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033 (9th Cir. 2018). Particularly, in *Glacier Films*, the Ninth Circuit characterized the conclusion of the Magistrate Judge – the same Magistrate Judge as in *Cobbler Nevada* – that the degree of success in BitTorrent copyright infringement cases is minimal as "twisting total triumph" and "a flawed premise that mixes and matches actual success with the determination of a reasonable fee award." *Id.* at 1038. Indeed, the Ninth Circuit pointed out that in the contrary they have expressed concern that a "small award for damages," without fees, may be "insufficient to deter future copyright infringements such as the one at issue here." *Id*. at 1039. Moreover, the Plaintiffs should not be punished for enforcing its copyright in the Work against the number of people in this district. The Ninth Circuit pointed out that "individual cases nonetheless deserve to be judged on their own merits and not saddled with a blanket indictment against peer-to-peer copyright

litigation. The sheer volume of suits should not preordain a court's fee determination in any one suit." *Id*. at 1038

## B. Deterrence

The interest of deterrence weighs in favor of granting Plaintiffs' motion for attorney's fees. Not only did Defendant reproduce the Work without a license, he also shared a copy of it with thousands of others. *See* SAC at ¶¶65, 71. Accordingly, the interest of deterrence weighs in favor of fee-shifting.

## C. The Goals of the Copyright Act

The Copyright Act is intended to "'promote the Progress of Science and useful Arts' by 'assuring authors the right to their original expression' and 'encouraging others to build freely upon the ideas and information conveyed by a work.'" *Feist Publ'ns, Inc.*, 499 U.S. at 349-50. Defendant pirated and distributed Plaintiff's Work. Thus, Defendant's conduct frustrates the goals of the Copyright Act.

## D. Objective Unreasonableness

The objective unreasonableness of Defendant's conduct also supports fee-shifting. Defendant's failure to even participate in the Rule 26 conference prevented Plaintiff from conducting discovery. Further, Defendant's conduct forced Plaintiff to file the present motion for default. The unreasonableness of Defendant's conduct during this litigation supports awarding attorney's fees to Plaintiffs.

## E.  Calculation of Attorney's Fees

Reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fisher v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. See *Fisher*, 214 F.3d at 1119 (citation omitted). The factors the Ninth Circuit articulated in *Kerr* are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70. The subsumed factors taken into account in the "lodestar" calculation are: "'(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained,' *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996), and (5) the contingent nature of the fee agreement," *City of Burlington v. Dague,* 505 U.S. 557, 112 S. Ct. 2638, 2643, 120 L. Ed. 2d 449 (1992). Once calculated, the

"lodestar" is presumptively reasonable. See *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987); see also *Fisher*, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

Plaintiff requests the following lodestar amount for attorneys' fees it incurred in this case as detailed in the attached Declaration of Counsel with regards to Defendant:

| | | |
|---|---|---|
| KERRY CULPEPPER | 29 hours @ $250/hour = | $ 7,250 |
| JOSHUA LEE (Law Clerk) | 3.75 hours @ $125/hour = | $468.75 |

Additionally, Plaintiff seeks to recover the Hawaii General Excise Tax related to those fees in the amount of $363.71 and taxable costs of $3162.30.

The taxable costs requested from Defendant include the $400 filing fee for filing the complaint, $162.30 fee to serve the SAC upon Defendant and the $2600 production fee to Defendant's ISP Charter.

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees. See *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). The reasonable hourly rate should reflect the prevailing market rates in the community.  Although attorneys are required to provide evidence that the rate charged is reasonable, *see Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987), this Court is better aware

28

of the prevailing rates in the community, having had the opportunity to review fee requests of many attorneys.  In *ME2 Productions, Inc. v. Pumaras*, this Court determined that a billing rate of $250 for Plaintiff's Counsel was consistent with the prevailing rates in the community. *See ME2 Productions, Inc. v. Pumaras,* Civ. No. 1:17-00078 SOM-RLP at 18.

## VIII.  <u>CONCLUSION</u>

Accordingly, Plaintiffs respectfully requests that the Court enter default judgment against Defendant and issue an award of statututory damages in favor of Fallen Productions, Inc. of $97,704.79, statutory damages in favor of HB Productions, Inc., Rambo V Productions, Inc. and Definition Delaware, LLC in the amount of $2250 and taxable costs of $3562.30.

DATED: Kailua-Kona, Hawaii, August 13, 2020.

CULPEPPER IP, LLLC

<u>/s/ Kerry S. Culpepper</u>
Kerry S. Culpepper

Attorney for Plaintiffs